IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

PHYLLIS A. THOMAS,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀CIVIL ACTION NO. 1:14cv50-MHT
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀⠀⠀⠀(WO)
CAROLYN W. COLVIN,⠀⠀⠀⠀⠀)
Acting Commissioner of Social Security,[1]⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀)

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.  INTRODUCTION

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., alleging that she was unable to work because of a disability beginning on January 31, 2009.[2]  Her application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[3]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

[2]  The plaintiff previously filed a claim for disability and was found disabled for a closed period from March 1, 2005 to January 28, 2009.  (R. 11).

[3]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social

is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  Based

on the court's review of the record in this case and the briefs of the parties, the court

concludes that the decision of the Commissioner should be affirmed.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months.

To make this determination[4] the Commissioner employs a five step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled.

---

Security matters were transferred to the Commissioner of Social Security.

[4]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th  Cir. 2004).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).  The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must, however,] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[5] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III.  THE ISSUES

*A. Introduction*.  Thomas was 51 years old at the time of the hearing before the ALJ. (R. 49).  Her prior work experience includes work as a "hand packager, duct maker, day worker, poultry hanger, and industrial cleaner in the chicken house." (R. 26).  Following the administrative hearing, the ALJ concluded that Thomas has severe impairments of "lumbar spine pain, occluded carotid artery without infarction, history of transient ischemic attack, headaches, anxiety disorder with depression, substance abuse disorder in current partial remission, and borderline intellectual functioning." (R. 13-14).  The ALJ concluded that Thomas was able to perform her past relevant work as a Duct Maker, and thus, she was not disabled. (R. 26).  Furthermore,  the ALJ concluded that Thomas was not disabled because she has the residual functional capacity to perform other work that is available in the national economy.  (*Id*.)

*B. The Plaintiff's Claims*.  As stated by the plaintiff, Thomas presents seven issues for the Court's review.

I.      The ALJ failed to review her claims for mental retardation under 12.05C.

II.     The ALJ failed to properly consider the opinion of the treating physicians.

III.    The ALJ failed to consider whether the claimant would be disabled if she did not have a history of substance abuse.

IV.     Application of the Medical-Vocational guidelines renders the claimant disabled.

V.      The claimant could not perform the jobs provided by the vocational expert at step four (past relevant work) and five (other jobs not previously performed).

4

VI.     The ALJ utilized an incorrect date last insured.

VII.    The concurrent SSI application was not processed.

(Doc. # 13, Pl's Br. at 2).

## IV.  DISCUSSION

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).  The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999.  The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review.  *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981).  The ALJ must also state, with sufficient specificity, the reasons for her decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).  Within this analytical framework, the court will

address the plaintiff's claims.

   **A. *The ALJ failed to review her claims for mental retardation under 12.05C*.**  The
plaintiff argues that the ALJ failed to consider whether Thomas meets or equals Listing
12.05, *Intellectual disability,*[6] of the Listing of Impairments. *See* 20 C.F.R. Subpart P,
Appendix 1.  Listing 12.05 provides, in pertinent part, that a claimant is disabled if she meets
the following criteria:

> § 12.05. *Intellectual disability.*  Intellectual disability refers to significantly
> subaverage general intellectual functioning with deficits in adaptive
> functioning initially manifested during the developmental period; *i.e.*, the
> evidence demonstrates or supports onset of impairment before age 22.
>       The required level of severity for this disorder is met when the
> requirements in A, B, C, or D are satisfied . . .
>
>    C. A valid verbal, performance, or full scale I.Q. of 60 through 70 and a
> physical or other mental impairment imposing additional and significant work-
> related limitation of function.

*See* 20 C.F.R. Pt. 220, App. 1, Listing 12.05C.  Consequently, a claimant meets the strictures
of 12.05(C) by presenting evidence of (1) a sub-average general intellectual functioning
initially manifested prior to age of twenty-two; (2) valid IQ score of 60 to 70 inclusive; and
(3) evidence of an additional mental or physical impairment that has more than a "minimal
effect" on the claimant's ability to perform basic work activities.  *Lowery v. Sullivan*, 979
F.2d 835 (11th Cir. 1992); *Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir. 1985).

   At the administrative hearing in January 2012, her counsel asserted that Thomas'

---

   [6] "The 2013 version of the Listing of Impairments replaced the term 'Mental Retardation' with
'Intellectual Disability.'" *T.R.C. ex rel. Boyd v. Comm'r*, *Soc.Sec. Admin.*, 553 F. App'x 914, 919  n.2 (11th
Cir. 2014).

primary severe impairment was anxiety, not intellectual disability.

> ATTY:   Well, the primary severe impairment would be 12.06 for anxiety. She also has another of other impairments. I don't know that they necessarily meet a listing. Now the other thing I noticed was if you look at Exhibits, that's going to be the E exhibits, page 195 I've got it. She had an IQ test done when she was in school by a Dr. Kirkland [PHONETIC]. They gave her an IQ of 67 so that's one thing that I was looking at and also Dr. Jordan [PHONETIC] at 6F he estimated that she had a low average intelligence which the actual testing would put her a little bit below that actually but as far as the listing goes she's got 12.06 anxiety. She's been diagnosed several times with having a low, which I know, I guess you're really not supposed to go by exactly but that GAF score has been low several times and she has a number of other problems which add and with that although I don't think they meet a listing level. . . .

(R. 37).

However, in June 2012, at another administrative hearing, counsel raised the issue of

Thomas' intellectual functioning.

> ATTY:   . . . As far as Ms. Thomas' condition her primary ailments, of course, are her mental conditions the anxiety and depression that she suffers from, also her intellectual functioning is probably, and I always feel bad about addressing this with the claimant but, you know but her IQ has been tested several times in the 60's range and there's been some discussion about that where exactly she's fallen in so and that's gone all the way from Exhibit 1F all the way through Dr. Trakner's [PHONETIC] most recent CE that Judge Sheely obtained so that's, you know, so we're looking at 12.05C issue there. . . .

(R. 47).

The ALJ considered whether Thomas's intellectual functioning constituted mental

retardation without explicitly referencing Listing 12.05C.

Her intelligence was estimated to be in the low average range but she was assessed as capable of performing simple tasks without supervision (Exhibit B6F). The claimant was measured with significant deficits in her intellectual functioning, according to the March 2012 consultative examination. However, the results of cognitive testing have limited validity, considering the contraindicative results of her testing. The overall results support intellectual function in the borderline range, but there was no finding of mental retardation.

(R.16).

The ALJ also described in detail the evidence related to Thomas' intellectual functioning.

The claimant underwent a consultative psychological examination by Randy Jordan, Psy.D. on July 28, 2010. . . . She was unable to perform concentration testing, but her memory was not compromised. Her intelligence was estimated in the low average range. Dr. Jordan assessed her daily living skills were not compromised by intellectual or psychiatric function. . .   Dr. Jordan's consultative report and assessment of the claimant's mental capacity was afforded significant weight in determining moderate deficits in mental functioning, in order to accommodate her mental impairments. This evidence was used in support of the moderate restrictions in social function and concentration, persistence and pace reflected in the residual functional capacity assessment.

*       *       *

An assessment of the claimant's mental capacity was performed by Donald R. Hinton, Ph.D., in August of 2010. The claimant was assessed with mild restriction in activities of daily living, and moderate difficulties in maintaining social functioning as well as concentration, persistence or pace. As a result, she remained capable (sic) performing short simple tasks, and maintain attention and concentration for two-hour periods, but contact with the general public should be infrequent (Exhibit B8F).

*       *       *

The claimant underwent another consultative psychological examination

8

performed by Barbara T. Traenkner, Ph.D., in March of 2012. . . .The claimant's effort on testing was described as moderate. Her effort on testing only supports moderate validity in her scores. There were contraindicative results in her use of vocabulary, but clinical findings were found to support borderline intellectual functioning. She achieved a Full Scale IQ score of 64, which appears to be in the extremely low range. However, these findings did not merit a diagnosis of mental retardation. Furthermore, the concerns regarding the validity of her testing had been noted, and the evidence does not support these results are an accurate measure of her intellectual functioning. Dr. Traenkner provided a medical source statement of her mental capacity. The claimant was assessed with mild to moderate limitations in functioning based on her combination of impairments, including limited intellectual funding, anxiety, depression, and significant history of polysubstance abuse with history of relapse (Exhibit B20F). . . .

(R. 20-21).

After reviewing the medical evidence, the ALJ evaluated Thomas' intellectual abilities and determined that she suffers from borderline intellectual functioning, and not mental retardation. (R.14). Thus, the ALJ implicitly considered whether Thomas met Listing 12.05C and concluded that she did not. The ALJ's determination is supported by substantial evidence. Thomas admitted that she completed the paperwork to apply for disability. (R. 50). Thomas did not raise intellectual functioning as a severe impairment in her first application for disability for the closed period from March 1, 2005 through January 28, 2008, (R. 82). In her disability report, Thomas reported that she could read, understand and write English. (R.235). She did not allege an intellectual disability as a mental impairment when she applied for disability. (R. 236). It was not until her second administrative hearing that she argued that she might meet Listing 12.05C. (R. 47)

Thomas relies on her school records to demonstrate that she meets Listing 12.05C.[7] Thomas provided two pages of records from Geneva High School in Geneva, Alabama.  (R. 303-04).  Her grades in the seventh,  eighth and ninth grades generally were D's and F's except for a C- in home economics and a C and B in P.E. in ninth grade.  (R. 303). Furthermore, Thomas was given a psychological evaluation in the sixth grade to determine whether she should be placed in special education classes.  (R. 305).  At that time, she had "a very poor academic record except for reading and mathematics.  She was in special education class for one year." (*Id.*)  She was "achieving at least three grades below her grade level." (*Id.*)  She scored a 67 on the Stanford Binet Intelligence Scale test and she was recommended for placement in "Educable Special Education class."  (*Id.*)

The record is unclear precisely how much education Thomas possesses.  At the administrative hearing, the plaintiff testified that she did not have a G.E.D.  (R. 49-50).  However, on her disability application, she indicated that she completed tenth grade, and had not taken special education classes.  (R. 237).  Dr. Jordan indicated in a consultative evaluation report done at the request of the Commissioner, that Thomas had completed the tenth grade, attended regular classes, and has a GED.  (R. 379).  Spectracare's intake form also indicates that Thomas finished the 10th grade and she had a GED.  (R. 522).  Dr. Barbara Traenkner, on the other hand, noted in her consultative evaluation report done at the request of the Commissioner, that Thomas

---

[7] Listing 12.05C requires that Thomas establish the onset of impairment before age 22.

> dropped out of school part way through the 8th grade.  She did not get her GED or continue any schooling. . . . She was in special education class from the second to the seventh grade, with particular focus on spelling and reading.

(R. 560).

When there is a conflict, inconsistency, or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why she accepted or rejected a finding.  When faced with this conflicting evidence, the ALJ addressed the inconsistencies, and explained why she determined that Thomas suffered from borderline intellectual functioning and not mental retardation.

> The claimant has provided vague and inconsistent statements regarding her background and condition. . . . The claimant has also provided varying accounts of her educational history.  She testified that she dropped out of school in the 8th grade and has trouble learning, and has been unable to get her general equivalency diploma (GED), although she tried to do so.  However, she reported that she completed school through the 10th grade and was able to get her GED in the July 2010 consultative psychological examination (Exhibit B6F).  The claimant's initial disability report also stated that she had completed 10th grade, contrary to her hearing testimony (Exhibit  B1E). . . .The claimant has provided numerous inconsistent statements regarding her background, capacity to function, and reasons she remains unable to function effectively.  The inconsistencies in her accounts further limit the credibility of statements made regarding the nature and severity of her symptoms and corresponding functional deficits.  These inconsistencies further support the claimant's condition would be accommodated by the limitations provided above.[8]

(R. 25) (footnote added).

Next, under section 12.05C, a person is disabled if she has a valid verbal,

---

[8]  The plaintiff does not challenge the ALJ's credibility findings.

11

performance, or full scale IQ of 60 through 70 and a physical or other mental impairment which imposes additional significant limitations of function. 20 C.F.R. Pt. 220, App. 1. Listing 12.05.   Thomas argues that because she has an IQ score of 64 from Dr. Traenkner, she meets the Listing.  The plaintiff was administered the Wechsler Intelligence Scale for Adults - III (WAIS-III) by Dr. Traenkner, a licensed clinical psychologist, on March 18, 2012.  (R. 559-62).  She obtained a full scale I.Q. score of 64.  Dr. Traenkner indicated that the plaintiff was compliant and cooperative, her attention was "generally good," and the test results were "considered *moderately* valid."  (R. 560) (emphasis added).

> Ms. Thomas' scores on the  Weschler Adult Intelligence Scale, Fourth Edition (WAIS-IV) reflect poor intellectual functioning; her Full Scale IQ is a 64, and is in the Extremely Low range.  Her Verbal Comprehension is 61 (Extremely Low range).  Her Perceptual Reasoning Index is a 73 and her Processing Speed is a 76, both scores are in the Borderline Range.  Her Subtest scores  range between the 1st and 9th percentile of the population.  Ms. Thomas only made a few written errors on the test.  Her effort on the test was moderate.  She did not linger over items, except for several items on the Block Design subtest. Scores are considered moderately valid.  Of note, she was able to use one of the vocabulary items correctly in a sentence, but was unable to explain what it meant, which is contraindicative.  Based on her education level, clinical presentation and test scores, her intellectual functioning is likely in the Borderline Range.

(*Id.*)

Dr. Traenkner concluded that based on Thomas' cooperation and compliance throughout the testing, the "evaluation is considered generally valid."  (R. 561).  Thereafter, Dr. Traenkner opined that Thomas' "ability to understand and follow simple directions is unimpaired by her psychiatric function, but due to her poor intellectual functioning and

12

depressive symptoms, she may have a *mild* impairment following complex directions." (*Id*.) (emphasis added); *see also* R. 563 ("Due to poor intellectual functioning, *mild* impairment may be present in following complex instruction.").

The Commissioner argues that Thomas cannot demonstrate that she meets Listing 12.05 because she does not have a *valid* IQ score and Dr. Traenkner did not diagnose mental retardation. *See* Doc. # 18 at 5-6. While the Listing does not require evidence of a diagnosis of mental retardation, it does require "a valid verbal, performance, or full scale IQ of 60 through 70." The ALJ recognized that Dr. Traenkner considered Thomas' scores to be "moderately valid," and "[t]here contraindicative results in [Thomas'] use of vocabulary." (R. 21). The ALJ considered Dr. Traenkner's assessment of Thomas' mental capacity. "The claimant was assessed with mild to moderate limitations in functioning, anxiety, depression and significant history of polysubstance abuse with history of relapse." (R. 21).

I.Q. scores are not necessarily conclusive of mental retardation. *See Popp v. Heckler*, 779 F.2d 1497, 1499-1500 (11th Cir. 1986) (ALJ could disregard standardized I.Q. scores which were inconsistent with activities and behavior). Dr. Traenkner, and no other medical professional, has suggested that Thomas' intellectual functioning is consistent with a finding of intellectual disability within the meaning of Listing 12.05C. Finally, and perhaps more importantly, Thomas does not demonstrate, and the record does not indicate, that her intellectual deficiencies *significantly impair* her ability to work. Thomas admitted that she could read, write and do simple math, although she asserted that she was not a strong speller

and her handwriting was very sloppy.  (R. 28).

In this case, the ALJ concluded, after from a review of the evidence, that Thomas suffered from borderline intellectual functioning and thus did not meet the criteria of Listing 12.05C. Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's factual findings. *Lowery*, 979 F.2d 837.  The ALJ's findings meet the reasonableness standard.

**B.  *The ALJ failed to properly consider the opinion of the treating physicians*.**

Thomas next argues that the ALJ improperly discounted the opinions of her treating physicians, Dr. Lopez and Dr. Arnold.  (Doc. # 13, Pl's Br. at 5-6).  The law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so.  *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).  The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)).

The ALJ's failure to give considerable weight to the treating physician's opinion is reversible

error. *Broughton*, 776 F.2d at 961-62.

There are, however, limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, *or* where the evidence supports a contrary finding. Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

On May 23, 2012, Dr. Lopez completed a medical source statement assessing Thomas's ability to do work-related activities. (R. 632-38). According to Dr. Lopez, Thomas has marked limitations in four areas and moderate limitations in three areas of dealing with her ability to make occupational adjustments. (R. 632-33). She has marked limitations in two

areas and moderate limitations in two areas of making personal-social adjustments. (R. 633). She has marked limitations in nine areas and moderate limitations in two areas of concentration, persistence or pace. (R. 636-37). According to Dr. Lopez, Thomas' limitations stem from her chronic mood disorder and chronic depression. (R. 634). He opined that "she can't work." (R. 635).

After reviewing the medical evidence, the ALJ concluded that Dr. Lopez's "assessment is contradicted by his own treatment notes, remains inconsistent with the full record regarding the claimant's mental capacity, and is afforded little weight." (R. 22).

> There is no significant evidence cited in support of this assessment, and corresponding treatment records from SpectraCare do not support Dr. Lopez's findings. Mental health treatment records noted moderate progress with treatment, and illustrate limited durations of treatment, separated by the claimant's noncompliance with the treatment prescribed as documented in December 2011 (Exhibits B16F and B24). The SpectraCare treatment notes are inconsistent with Dr. Lopez's assessments regarding the resistence to treatment, and do not support the severity of mental functioning alleged.

(*Id.*)

The ALJ's decision to give Dr. Lopez's opinion little weight is supported by substantial evidence. Treatment records from Spectra Care do not support Dr. Lopez's assessment of the severity of Thomas' mental impairments. For example, Thomas presented to SpectraCare for an intake assessment on September 8, 2011. The assessment was completed by Beate Holmes ("Holmes"), a licensed social worker. (R. 512-26). Dr. Hammond, a licensed psychologist, also signed the intake assessment. (R. 516). Although Dr. Lopez prescribed Celexa and Trazodone for Thomas on October 6, 2011, there is no

16

indication that Thomas saw Dr. Lopez, or attended individual or group therapy on that date. (R. 509).  Thomas was terminated from SpectraCare on December 13, 2011 for "non-compliance with treatment." (R. 507).

Thomas returned to SpectraCare on February 16, 2012, complaining that her depression had gotten worse. (R. 609-24).  Holmes conducted another assessment.  (*Id*.) Thomas participated in group therapy on February 28, 2012.  (R. 607).  Her progress was described as moderate. (R. 608).  On March 1, 2012, Dr. Lopez prescribed Celexa, Doxepin and Vistaril for Thomas.  (R. 627-31).  On March 13, 2012, Thomas participated in group therapy and it was noted that her "[p]rogess is moderate evidenced by medication compliance and report of improvement." (R. 605).  Thomas also reported that she would be taking a month-long trip to "get out" of the house.  (R. 606).  On April 10, 2012, Thomas canceled her therapy appointment. (R. 603-04).  On April 24, 2012, Thomas attended group therapy, and her progress was noted as satisfactory. (R.601-02).  The last report of Thomas' attendance at group therapy was on May 8, 2012.  (R. 599-600).

Although Dr. Lopez assessed Thomas with significant marked and moderate limitations there is no evidence in the treatment notes to indicate that Dr. Lopez ever evaluated or even saw Thomas.  His assessment was based on four group therapy appointments over a three month period.  Consequently, Dr. Lopez's treatment notes do not support the level of disability he attributes to Thomas.

The  ALJ may disregard the opinion of a physician, provided that she states with

particularity reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987).  The ALJ examined and evaluated the treatment records for evidence supporting Dr. Lopez's assessment of Thomas' ability to work, and she considered Thomas' own testimony.  Only then did the ALJ discount Dr. Lopez's opinion that Thomas was disabled.  Based on its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected Dr. Lopez's opinion regarding Thomas' mental limitations.

Thomas also asserts that the ALJ improperly discounted the opinion of Dr. David Arnold.  On January 12, 2012, Dr. Arnold completed a Physical Residual Functional Capacity Questionnaire.  (R. 527-31). According to Dr. Arnold, Thomas' depression affects her physical functional limitations.  (R. 528).  Dr. Arnold opined that Thomas' depression and anxiety would occasionally interfere with her attention and concentration but she was incapable of tolerating "even 'low stress' jobs."  (*Id*.)  He then offered opinions on Thomas' physical functional limitations.  (R.528-30).

After reviewing the medical evidence, the ALJ concluded that Dr. Arnold's "assessment is afforded no weight. The assessment listed physical limitations, based on the diagnosis of mental impairments.  This assessment is internally inconsistent and remains unsupported by corresponding treatment records."  (R. 24).

> An assessment of the claimant's physical capacity to function was completed by treating medical source David H. Arnold, M.D., and dated January 12, 2012.  The claimant was assessed as incapable of performing even low stress jobs.  She was assessed as capable of standing and walking for a total of two

18

hours and sitting for a total of two hours during an eight-hour workday. However, she was also assessed as capable of standing for two and a half hours at one time and able to sit for two hours and forty-five minutes at one time, which makes this assessment internally inconsistent.  The claimant was also assessed with restrictions in lifting and carrying consistent with the sedentary exertional range, and would require unscheduled breaks.  She was further restricted in range of motion of the neck and limited in postural function. She was assessed as likely absent from work due to her condition and treatment for more than four days per month.  However, the impairments cited in support of these severe restrictions in her physical capacity to function were depression and anxiety.  Furthermore, the treatment evidence cited in support and accompanying this assessment included diagnoses of a tension headache and depression, but did not reflect physical impairments that would restrict her basic physical capacity to function below the full range of sedentary work. Corresponding treatment records cited in support found that the claimant demonstrated no abnormalities in the respiratory function, and breathing was unlabored.  There was no significant orthopedic abnormalities noted on examination, and there were no major deficits in coordination or sensation (Exhibit B17F).

(R. 23-24).

The ALJ's decision to give Dr. Arnold's opinion no weight is supported by substantial evidence. Treatment records do not support Dr. Arnold's assessment of Thomas' functional capacity.  For example, treatment records reveal that Dr. Arnold saw Thomas on November 30, 2006, January 12, 2012, and March 27, 2012  (R. 315-17, 532-35 & 592-93).  In 2006, Thomas complained of blockage of her carotid arteries.  (R. 315-17).  An examination revealed no swelling, joint tenderness or other abnormalities.  (R.316). On January 12, 2012, Thomas complained of headaches. (R.532). She also complained of "chronic neck and back pain,"and wanted disability forms completed.  (R. 533).  According to Thomas, she "can't walk but a little bit."  (*Id.*)  She "hurts all over," and "never feels good."  (*Id.*)  She also

19

complained of shortness of breath. (*Id*.). A physical examination found no wheezing, and no tenderness of her back or neck. (R. 534). Dr. Arnold diagnosed her with tension headaches and depression. (*Id*.).

On March 27, 2012, Thomas presented to Dr. Arnold complaining of chronic headaches and pain in her back, neck and shoulders. (R. 592). In this examination, Dr. Arnold determined that Thomas' gait was antalgic but she had normal muscle strength and tone. (R.593). She had a normal left straight leg raise but a positive straight leg raise on the right leg. (*Id*.) While she had muscle spasms in the back, her joint stability was normal. (*Id*.) There was tenderness at the left sacroiliac area and pain to palpation along the lower back. (*Id*.) Dr. Arnold diagnosed Thomas with degenerative disc disease, lumbar, and prescribed medication. (*Id*.).

The ALJ was entitled to discredit Dr. Arnold's opinion on grounds that it was unsupported by his own objective observations and on grounds that it was inconsistent with the medical record and the record as a whole. *See* 20 C.F.R. § 416.927(d)(3)-(4). Dr. Arnold's treatment records do not support his assessment of the severity of Thomas' impairments. Dr. Arnold's assessment was based on one office visit in 2006 and two office visits in 2012. Dr. Arnold treated Thomas conservatively with medication, and his own records do not support the severity he ascribes to Thomas' physical functional limitations. Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected Dr. Arnold's opinion regarding the

limitations caused by Thomas' physical impairments.

**C.  *The ALJ failed to consider whether the claimant would be disabled if she did not a history of substance abuse*.**  An individual is not considered "disabled" for purposes of social security disability  insurance or supplemental security income if alcoholism or drug addiction is "a contributing factor material to the Commissioner's determination that the individual is disabled."  2 U.S.C. § 423(d)(2)(C); 42 U.S.C. § 1382c(a)(3)(J).  Therefore, when the ALJ finds that a claimant is disabled and there is medical evidence of drug addiction or alcoholism, the ALJ must determine whether the drug addiction or alcoholism is a contributing factor material to the determination of disability.  20 C.F.R. §§ 416.935(a); 404.1535(a).   The  regulations  implementing  §  423(d)(2)(C)  provide  that  once  the Commissioner determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner then "must determine whether ... drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535.  The key factor in determining whether drug addiction or alcoholism is a contributing  factor  material  to  the  determination  of  a  disability  (the  "materiality determination") is whether the claimant would still be found disabled if she stopped using drugs or alcohol. *See* 20 C.F.R. § 404.1535(b)(1).

However, the ALJ only reaches the materiality question after the claimant first has been found to be disabled.  Because the ALJ determined that Thomas was not disabled, the ALJ, in accordance with the regulations, did not consider whether Thomas' substance abuse

was a contributing factor.  *See* 20 C.F.R. § 404.1535. She is entitled to no relief on this basis.

**D. Application of the Medical-Vocational guidelines renders the claimant disabled**.

Thomas asserts that because the ALJ found that she could not perform a full range of light

duty, application of the Medical-Vocational guidelines would render her disabled.  (Doc. #

13 at 7).  She is incorrect.  Application of the Medical-Vocational Guidelines is appropriate

when in cases

> which cannot be evaluated on medical considerations alone, where an
> individual with a severe medically determinable physical or mental
> impairment(s) is not engaging in substantial gainful activity and the
> *individual's impairment(s) prevents the performance of his or her vocationally
> relevant past work.*

20 C.F.R. Pt. 404, Subpart P, Appendix 2, MEDICAL-VOCATIONAL GUIDELINES 200.00

*Introduction* (emphasis added).  The ALJ found that Thomas could perform her past relevant

work as a Duct Maker at step four of the sequential analysis, and the plaintiff does not

challenge this finding.  (R.26).  The Medical-Vocational Guidelines become relevant at step

5 of the sequential analysis when the ALJ must determine whether the plaintiff can perform

other work in the national economy.  Because the ALJ concluded at step 4 that the plaintiff

could return to her past relevant work, the Medical-Vocational Guidelines are not applicable

to Thomas.  *See Phillips,* 357 F.3d at 1242 ("The general rule is that after determining the

claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the

grids to determine whether other jobs exist in the national economy that a claimant is able

to perform.")

**E.  The claimant could not perform the jobs provided by the vocational expert at step four (past relevant work) and five (other jobs not previously performed)**.  An ALJ is required to independently assess a claimant's residual functional capacity "based upon all of the relevant evidence." 20 CFR § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) ("Responsibility for assessing residual functional capacity at the administrative law judge hearing . . . level.  If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *See also Lewis*, 125 F.3d at 1440  ("The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments.").  "Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a)." *Peeler v. Astrue,* 400 F. App'x 492, 494 n.2 (11th Cir. 2010).

In response to hypothetical questions at the administrative hearing in this case, the VE testified that there were no jobs available in the national economy for someone with Thomas' functional limitations *if* her limitations also included functional limitations involving attendance problems or reflected in Dr. Lopez's opinion.  (R. 70-73).  In essence, Thomas argues that the ALJ erred by failing to credit Dr. Lopez's opinion in determining her functional capacity. It is clear from the context of the ALJ's opinion, and from the record as

a whole, that the ALJ reviewed and considered all the medical evidence in the record in determining Thomas' RFC.  To the extent that the plaintiff is arguing that the ALJ should have accepted her treating physicians' opinions regarding her psychiatric and attendance issues, as the court explained, the ALJ had good cause to discount their opinions. Thus, the ALJ was not required to include those limitations in her questions to the vocational expert. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).   The court has independently considered the record as a whole and finds that the record provides substantial support for the ALJ's conclusions.  Consequently, the court concludes there was sufficient medical evidence before the ALJ from which she properly could made a residual functional capacity assessment.

    **F.  The ALJ utilized an incorrect date last insured**.  With respect to this issue, the plaintiff's argument, in its entirety, is as follows.

> The ALJ stated that the claimant's date last insured for disability beneifits was March 31, 2011. CR 12-13, 27-28.  However, the record states that the correct date last insured was September 30, 2011.  CR230.  Therefore, the ALJ failed to consider whether the claimant became disabled during this six month period of time.  This case should be remanded for consideration of disability from March 31 to September 30, 2011.

(Doc. # 13 at 8).  Thomas alleges no facts and points to no evidence in the record in support of her position that she became disabled between April 1, 2011 and September 30, 2011.  The burden is on the plaintiff to demonstrate that the Commissioner's decision is not supported by substantial evidence, and the argument of counsel is insufficient to meet this burden.

More importantly, however, the court has scoured the record for any evidence that might suggest that Thomas' condition worsened between April and September 2011, and has found none.  She is entitled to no relief on this basis.

**G.  The concurrent SSI application was not processed**.  There appears to be some confusion as to whether Thomas waived her right to file an application for supplemental social security income benefits under Title XVI.  (Doc. # 13 at 8-9) ("Given the  impeding date last insured from the date of her application for disability benefits under Title II, it is unreasonable that the claimant would have knowingly waived filing for SSI Title VXI benefits concurrently.")

The existence of a Title XVI application for SSI benefits would not alter the analysis or the result in this case.  *See Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990) ("The regulations implementing the Title II disability standard, 42 U.S.C. § 423(d) . . . and those implementing the identical Title XVI standard, § 1382c(a)(3) . . . are the same in all relevant respects.  *Compare* 20 CFR §§ 404.1520-1530 with §§ 416.920-930 (1989)); *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A) ("To be entitled either to Social Security disability insurance benefits, 42 U.S.C.§ 423, or supplemental income benefits, 42 U.S.C. § 1382, a claimant must establish that she is disabled. The statutory test for each of these benefits is the same.").

At this juncture, any error was harmless because the ALJ considered the record as a whole, including all medical evidence, and determined that Thomas was not disabled.  *See*

*Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis in the Social Security case context). *See also Howard v. Soc. Sec. Admin., Comm'r.*, 566 F. App'x 784, 787 (11th Cir. 2014) ("even if the AC improperly failed to consider some of [the plaintiff's] additional evidence, any error was harmless because we have independently reviewed all submitted evidence.") The court is not required "to remand for express findings when doing so would be a "wasteful corrective exercise" in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision." *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013). Because the ALJ concluded that Thomas was not entitled to disability benefits pursuant to Title II, she is also not eligible for supplemental social security income benefits under Title XVI.

## V.  CONCLUSION

"Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Ingram,* 496 F.3d at 1269 (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)). *See also Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988).  This the plaintiff has failed to do.  The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the decision of the Commissioner denying benefits to Thomas be AFFIRMED and that this case be DISMISSED with prejudice.  Further, it is

**ORDERED** that the parties shall file any objections to the said Recommendation on or before **September 17, 2015.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 3rd day of September, 2015.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE